# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

ANITA BUMPASS                                                    PLAINTIFF

v.                          Case No. 5:16-cv-00106-KGB

VERIZON WIRELESS                                                 DEFENDANT

## OPINION AND ORDER

Before the Court is defendant Verizon Wireless' ("Verizon") motion for summary judgment (Dkt. No. 34). Verizon moves for summary judgment on each of Ms. Bumpass' claims (Dkt. No. 34). Pending is a motion filed by Ms. Bumpass requesting additional time to respond (Dkt. No. 42). The Court grants that motion and considers Ms. Bumpass' response timely filed (Dkt. No. 42). Ms. Bumpass responded in opposition to Verizon's motion for summary judgment, and Verizon replied (Dkt. Nos. 43, 46). Ms. Bumpass then filed a "rebuttal to defendant's reply" and an "amendment to her memorandum and rebuttal to defendants' reply," which Verizon moves to strike (Dkt. Nos. 49, 50, 52).

In her complaint, Ms. Bumpass brings the following claims against Verizon: (1) discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e *et seq*.; (2) discrimination in violation of 42 U.S.C. § 1981; (3) discrimination in violation of § 3 of the Equal Pay Act of 1963, 77 Stat. 56, codified at 29 U.S.C. § 201, *et seq*.; (4) pursuant to 42 U.S.C. § 1983, alleged violations of the equal protection clause of the Fourteenth Amendment of the United States Constitution;[1] (5) discrimination in violation of Arkansas Civil

---

[1] To the extent Ms. Bumpass alleges claims pursuant to 42 U.S.C. § 1983 and the equal protection clause of the Fourteenth Amendment of the United States Constitution, discrimination claims brought pursuant to § 1983 are analyzed under the same burden-shifting framework as Title VII and §1981 claims. *Tipler v. Douglas County, Neb.*, 482 F.3d 1023, 1027 (8th Cir. 2007)(analysis similar when plaintiff alleges both Title VII and § 1983 claims based on a violation

Rights Act ("ACRA"), Arkansas Code Annotated § 16-123-101 *et seq.*; and (6) violations of Arkansas state law, including battery, breach of contract, and the tort of outrage (Dkt. No. 1, at 1).

Ms. Bumpass claims that she worked for Verizon from 2006 to 2010 in Waco, Texas; that she was transferred to a store in Little Rock, Arkansas, in 2010 and worked there for eight months; and then that she was transferred to a store in Pine Bluff, Arkansas, in October 2010 (*Id.*, at 3-4). Specifically, she complains of acts she alleges were taken by agents of Verizon with responsibility for the store where Ms. Bumpass worked, including Grant Leisure who was the District Manager; Katy Holmes, the Human Resource Representative; and Darrel Adams, the Assistant Manager (*Id.*, at 3). In part, she alleges that "[p]ursuant to companywide, statewide and individual store patterns and practices [she] was not afforded promotions and/or pay increases, commiserate with black or male counter parts. . . ." (*Id.*, at 4). She also contends that, in 2015, she was discharged allegedly in retaliation for complaining about harassment, retaliation, and hostile work environment directed toward her on the basis of age, race, and gender (*Id.*).

## I.     Findings Of Fact

### A.     Procedural History

Verizon filed a statement of undisputed material facts in support of its motion for summary judgment (Dkt. No. 36). Ms. Bumpass filed a response to Verizon's statement and filed her own statement of facts along with her response to Verizon's motion for summary judgment (Dkt. Nos.

---

of equal protection); *Chambers v. Wynne Sch. Dist.,* 909 F.2d 1214 (8th Cir. 1990) (*McDonnell Douglas* test has been used to evaluate a plaintiff's *prima facie* showing of discrimination for both § 1981 and § 1983 claims). However, Ms. Bumpass sues only Verizon; she makes no allegation of state action. As a result, the Court dismisses with prejudice her 42 U.S.C. § 1983 and Fourteenth Amendment claims. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974) (reaffirming that the Fourteenth Amendment offers no shield against private conduct that cannot be characterized as state action).

44, 45). Verizon moved to strike Ms. Bumpass' "unsupported responses" within her statement of facts (Dkt. No. 47). Ms. Bumpass also responded to Verizon's motion to strike (Dkt. No. 51). Verizon then moved to strike Ms. Bumpass' rebuttal to Verizon's reply, the amendment to Ms. Bumpass' rebuttal, and Ms. Bumpass' response to Verizon's original motion to strike (Dkt. No. 52).

For the following reasons, the Court grants, in part, and denies, in part, Verizon's motion to strike plaintiff's unsupported allegations and unsupported responses to defendant's statement of undisputed material facts (Dkt. No. 47). The Court grants, in part, and denies, in part, Verizon's motion to strike Ms. Bumpass' rebuttal and amendment to her rebuttal to Verizon's reply and to strike Ms. Bumpass' response to Verizon's original motion to strike (Dkt. No. 52).

Ms. Bumpass and Verizon both filed statements of undisputed material facts (Dkt. Nos. 36, 44). Each side responded to the other's statement of undisputed material facts (Dkt. Nos. 45, 47). The following facts are taken from both statements of undisputed material facts to the extent that the parties agree on the facts, except where specified by citation. To the extent the parties disagreed on purported statements of undisputed material fact, the Court has not deemed those facts undisputed. In reaching a determination on the pending motion for summary judgment, the Court has reviewed the record evidence in this case in the light most favorable to Ms. Bumpass, as the Court is required to do at this stage.

## B. Factual Background

Ms. Bumpass was formerly an employee of Verizon, and she was most recently employed at the Pine Bluff, Arkansas, location as a sales consultant (Dkt. No. 36, ¶ 1). She was an at-will employee (*Id*., ¶ 2). She worked at the Pine Bluff location from 2010 to 2015 (*Id*., ¶ 3). She transferred to the Pine Bluff location during the last part of September or the first part of October

2010 (Dkt. No. 44-1, at 13). She was consistently one of the top sales people at the Pine Bluff location (*Id*., ¶ 4). She made more money than Shannon Wilson, a male co-worker at the Pine Bluff location (Dkt. No. 36, ¶ 5).

In late 2014, Ms. Bumpass activated a new customer account, which included running a credit check for the new customer, over the phone without having the new customer present in the store (*Id*., ¶ 6). Ms. Bumpass, in her deposition, did not contest that this event occurred, although she clarified that the customer paid Ms. Bumpass cash that Ms. Bumpass then deposited into "the drawer." (Dkt. No. 44-1, at 14).

Ms. Bumpass contends that "[n]otwithstanding written policy prohibiting such actions," this action did not violate Verizon's "defacto" policy (Dkt. No. 45, ¶ 7). The record evidence includes Verizon's "ID Requirements" policy, which states that "[a]ll employees must authenticate the identities of partners and customers when performing sales transactions," including "new activations," "equipment upgrades," and "contract renewals." (Dkt. No. 36-1, at 6). The ID Requirements policy also states that "an acceptable form of ID must be presented and verified for all transactions requiring authentication." (*Id*.). Katie Mosley, a Senior Manager with Verizon,[2] avers that "[a]ctivating a new account (which would include checking a new customer's creditworthiness and obtaining their signature on the contract terms and conditions for service) over the phone is against Verizon policy" and is a "terminable offense." (*Id*., at 2). Jonathan Grant Laisure, a Project Manger for Verizon[3] who was a District Manager for the region including the

---

[2] The parties agree that Katie Mosley is incorrectly identified in Ms. Bumpass' complaint as "Katy Holmes."
[3] The parties agree that Jonathan Grant Laisure is incorrectly identified in Ms. Bumpass' complaint as "Grant Leisure."

Pine Bluff, Arkansas, location from December 2014 until December 2016, also avers that activating a new account over the phone is against Verizon policy (Dkt. No. 36-5, at 1).

At the time, Ms. Bumpass' supervisor was Kisha White (Gaddy) (Dkt. No. 36, ¶ 8). In late October 2014, Ms. Gaddy learned that Ms. Bumpass had activated the new account over the phone when the customer had questions about the service and requested a refund; Ms. Gaddy was told that the customer had not been informed about the charges she was incurring (*Id.*, ¶ 10). The record evidence includes an email dated October 22, 2014, from Darryl Adams to Ms. Gaddy in which he explains that he spoke with Shirley Owens who told him that she went into a store in California to get information about a Verizon service and that she then called into the Pine Bluff location (Dkt. Nos. 36-1, at 5; 44-3, at 1, 4). Ms. Owens told Mr. Adams that Ms. Bumpass helped her set up services over the phone (*Id.*). Mr. Adams noted that there were two accounts open for Ms. Owens, "one for the Sure Response and HPC." (*Id.*). Mr. Adams stated that Ms. Owens claimed that Ms. Bumpass did not tell her that the Sure Response service was extra and would cost an extra $30.00 a month in addition to the HPC service (*Id.*). Mr. Adams also noted that he "[p]ulled up the order number and the contract is not signed, this is a clear indicator that [the] process was done without the customer being in the store." (*Id.*).

Ms. Mosely and Mr. Laisure aver that activating a new account and checking creditworthiness of a new customer over the phone is against Verizon's Code of Conduct (Dkt. No. 45, ¶ 11). Ms. Bumpass contends that, contrary to Verizon's written policy and based on the defacto policy, her actions were permitted (*Id.*). The record evidence includes Verizon's Code of Conduct, which states that "the customer must be clearly informed of all monthly and per-use fees and any other material terms and restrictions for obtaining the advertised rate in marketing and promotional materials." (Dkt. No. 36-1, at 9). Ms. Moseley and Mr. Laisure aver that failing to

warn a customer about continued charges is against Verizon's Code of Conduct (Dkt. Nos. 36-1, at 2; 36-5, at 1). Ms. Bumpass disputes this contention, claiming that no such failure has been established and that there is no specific rule which declares her alleged actions were a code violation under the circumstances (Dkt. No. 45, ¶ 12).

Ms. Gaddy also learned that, earlier in 2014, Ms. Bumpass had processed a transaction for a friend on which she earned a commission (Dkt. Nos. 36-2, at 4-5; 44-3, at 5). In her deposition, Ms. Bumpass admits that in August 2014 she activated a line of service for a friend and was paid a commission on the sale (Dkt. No. 44-1, at 14).

Ms. Moseley and Mr. Laisure aver that processing a transaction for friends or family is against Verizon's Code of Conduct (Dkt. Nos. 36-1, at 2; 36-5, at 1. Verizon's Code of Conduct states that "[y]ou may not access account information concerning yourself, your friends, acquaintances, family or co-workers without prior approval by your supervisor." (Dkt. No. 36-7, at 1). Ms. Bumpass disputes that such conduct violates Verizon's Code of Conduct (Dkt. No. 45, ¶ 14).

At some point, Verizon learned that Ms. Bumpass had asked Mr. Wilson about adding a line to Ms. Bumpass' account. Mr. Wilson then asked Ms. Gaddy what he should do, and he was advised not to touch Ms. Bumpass' account (Dkt. No. 36-8, at 1). Later, Ms. Bumpass asked Mr. Wilson for his tablet, which he gave her (*Id*.). Mr. Wilson told Ms. Gaddy that Ms. Bumpass then started "to process the transaction by typing her number in and [Mr. Wilson] . . . doesn't remember at what point . . . he took over processing the account but did state that he finished the transaction and activated the phone." (*Id*.).

On November 24, 2014, Ms. Moseley and Ms. Gaddy interviewed Ms. Bumpass, and the notes from that interview are part of the record evidence. Ms. Bumpass was asked about the

transaction with Shirley Owens, and Ms. Bumpass explained that Ms. Owens has a cousin in Warren, Arkansas, named "Lula" who is blind (Dkt. No. 44-6, at 1). According to the notes from the interview, Ms. Bumpass explained that Ms. Owens asked if Ms. Bumpass could assist her cousin in obtaining a home phone and asked Ms. Bumpass to run her cousin's credit over the phone (*Id.*). Ms. Bumpass claimed that, out of compassion for the cousin, who is blind and without a home computer, Ms. Bumpass ran the transaction (*Id.*). She admitted that she did not get anyone in leadership involved in the transaction (*Id.*, at 2). Further, although Ms. Bumpass did collect some money for the transaction from the cousin, Ms. Bumpass also admitted that she covered a portion of the cost of the transaction out of her own pocket (*Id.*).

On January 9, 2015, Ms. Moseley and Mr. Laisure met with Ms. Bumpass about the transaction involving the friend (Dkt. No. 44-7).[4] There are notes regarding this meeting (*Id.*).

The parties do not dispute that Verizon's records indicate that, on January 16, 2015, Ms. Gaddy submitted to Verizon management a request for Ms. Bumpass' termination (Dkt. No. 45, ¶ 18). The parties do not dispute that Ms. Bumpass had a good relationship with Ms. Gaddy, the manager who recommended her termination (*Id.*, ¶ 21). The parties do not dispute that Ms. Bumpass filed her charge with the Equal Opportunity Commission ("EEOC") on June 26, 2015 (*Id.*, ¶ 24). In her deposition, Ms. Bumpass testified that her lawyer assisted her with filing the EEOC charge in June 2015, and she agreed that her statements in the charge reflected her complaints at the time (Dkt. No. 44-1, at 16). There is record evidence that the EEOC issued its dismissal and notice of right to sue to Ms. Bumpass on February 18, 2016 (Dkt. No. 1, at 7).

---

[4] The document memorializing this meeting states that the meeting was in January 2014 (Dkt. No. 44-7). However, the Court discerns the meeting likely actually took place in January 2015 because the document refers to activities that took place in August 2014.

Further, the parties do not dispute that Ms. Bumpass filed her complaint in this action on April 8, 2016 (Dkt. No. 45, ¶ 26).

### C. Record Evidence Related To Disputed Issues Of Fact

In reaching a determination on the pending motion for summary judgment the Court has reviewed the record evidence in this case in the light most favorable to Ms. Bumpass, as the Court is required to do at this stage. The Court recites certain of that record evidence here.

#### 1. Promotions At Pine Bluff

Ms. Bumpass contends that she applied for promotions at the Waco and Pine Bluff stores (*Id.*, at 17). In that portion of her EEOC intake questionnaire where she lists incidents of discrimination specifically, Ms. Bumpass does not list the denial of a promotion at the Pine Bluff store. She does list the denial of promotions at the Waco store (Dkt. No. 44-4, at 2-3). Despite this, in her deposition, Ms. Bumpass represented that she applied for an assistant manager and manager position at the Pine Bluff store once (Dkt. No. 44-1, at 17). She was unsure of the date she applied, although she said it was around the time Ms. Gaddy and Robin Trotter, who is an African American female and who held the position of assistant manager at the Pine Bluff store, started (*Id.*). Ms. Bumpass recalled that she applied through the PeopleSoft system but admitted that she received no acknowledgment or receipt of her application that time, despite having received such acknowledgments in the past (*Id.*). Further, she testified that she did not have a manager at the time to ask about her application being received (*Id.*).

#### 2. Prior Complaints About Pine Bluff

Ms. Bumpass alleges that, while she worked in the Pine Bluff store, members of management "handed off" customers who walked into the store to African American employees and male employees, instead of to her (Dkt. No. 44-1, at 18-19). She asserted a similar claim in

her EEOC intake questionnaire (Dkt. No. 44-4, at 6). She claims that she complained about this to several members of management at the Pine Bluff store, asking why they were steering customers to employees of other races despite Ms. Bumpass standing there ready to greet customers (Dkt. No. 44-1, at 18-19). Despite these alleged actions, Ms. Bumpass concedes that she was a "Winner's Circle finalist for three years," meaning that she was actually doing better than the other salespeople (*Id.*).

With respect to prior complaints about alleged conduct, Ms. Bumpass on her EEOC intake questionnaire claimed that she told Mr. Laisure about what she considered to be some harassment (Dkt. Nos. 44-1, at 20; 44-4, at 7). Ms. Bumpass claims that she reported Lemuel Smith, who is an African American male and who was a co-worker and later an assistant manager at the Pine Bluff store, according to Ms. Bumpass. Ms. Bumpass claims that Mr. Smith acted "extremely aggressive . . . in regards to approach, in regards to conversation, in regards to – almost like a bully action where, you know, if you don't do what I tell you to do, I'll write you up." (Dkt. No. 44-1, at 20). Although Ms. Bumpass described an incident at the Pine Bluff store involving Mr. Smith threatening to strike another employee, she admits that Mr. Smith's conduct in that incident was directed at another employee, not her (*Id.*). Further, she testified that Verizon investigated that incident (*Id.*).[5]

Ms. Bumpass maintains that she used the words "discrimination and race" when complaining to Mr. Laisure (*Id.*, at 22). According to Ms. Bumpass, she described to him her observation of "the favoritism of sale staff – and discrimination between male and female, black and white." (*Id.*). She claims to have told him specifically about certain incidents that happened

---

[5] This conduct was purportedly directed at Babe Free, who is a Caucasian female and who was a co-worker at the Pine Bluff store and over the age of 40 at the time of her employment. Ms. Free testified that she never made a complaint about this alleged incident (Dkt. No. 44-9, at 6).

to her and how she hoped he would work to "deter that type of behavior." (*Id.*). She admits that she only made a verbal complaint; she did not memorialize her conversation with him in any way (*Id.*). Further, she admits that she never went to Human Resources or compliance with these complaints (*Id.*). As Ms. Bumpass explained it, she understood to start by reporting her complaints to management and then to Human Resources or compliance if a complaint was not resolved (*Id.*). She testified that, if she believed an issue had been resolved, she did not go to Human Resources or compliance (*Id.*).

Ms. Bumpass also claims that she complained to Ms. Gaddy about Mr. Smith (*Id.*). She admits that her complaints were verbal; she did not submit written complaints or emails (*Id.*). Further, although she acknowledges that Verizon has a confidential compliance line for employees to call to file complaints, Ms. Bumpass admits that she did not do that (*Id.*). Ms. Bumpass contends that she complained about Mr. Smith at least three times to Ms. Gaddy (*Id.*). She asserts that the first complaint to Ms. Gaddy involved the way Mr. Smith purportedly spoke to the sales staff (*Id.*). She claims the second complaint was in relation to Mr. Smith taking a customer with whom she was working and giving that customer to another sales person in November 2014 (*Id.*). The third complaint involved Mr. Smith's alleged failure to assist her with customers' accounts (*Id.*, at 21-22). Ms. Bumpass admits that she did not report any of these incidents to Human Resources or compliance and that she was under the impression that management at the Pine Bluff store was taking care of the situations (*Id.*, at 22).

Although Ms. Bumpass claims Mr. Smith told her she would not succeed because she was white, she admits that Mr. Smith said this before he became a manager (*Id.*, at 42). Ms. Bumpass also alleges that Mr. Smith made comments that women "should not be in the position of sales, that women are – basically should be at home washing dishes and having babies. . . ." (*Id.*, at 21).

Ms. Bumpass contends that she and another female employee told Mr. Smith, during this conversation, that he was being very discriminatory against women (*Id.*). Ms. Bumpass admits that Mr. Smith, as an assistant manager at the Pine Bluff store, never disciplined her in writing but instead just took her to the side and had conversations with her about work and performance goals (*Id.*). Ms. Bumpass contends that she reported Mr. Smith's alleged conduct to Ms. Gaddy and assistant managers Jeffie Ford, who is female, and Ms. Trotter, but Ms. Bumpass acknowledges that she never made a written complaint, complained by email, or called the compliance hotline in regard to Mr. Smith (*Id.*). Ms. Bumpass admits that she was encouraged to bring problems to management but was aware that, if management could not resolve the issue, she could go to Human Resources or compliance (*Id.*). With respect to Mr. Smith's conduct, Ms. Bumpass admits that, after she spoke with Ms. Gaddy about the situation, Mr. Smith spoke to Ms. Bumpass differently, and Ms. Bumpass did not feel the need to speak with Human Resources or compliance (*Id.*). Mr. Smith testified that he had no involvement in the decision to terminate Ms. Bumpass (Dkt. No. 44-10, at 10).

Ms. Bumpass also claims to have complained to Ms. Gaddy about language, referring to the "N-word" being used by co-workers; that she believed several assistant managers were showing favoritism to sales staff; and that she felt slighted by not being asked to attend a kickoff function while other employees were asked (*Id.*, at 26). When pressed, Ms. Bumpass claimed to have told Ms. Gaddy she believed the favoritism was occurring because of race (*Id.*, at 27).

Ms. Bumpass also testified about being brought in by Ms. Trotter and asked not to use the word "Hon" when referring to customers (Dkt. No. 44-1, at 24). Ms. Bumpass takes issue with this counseling because she claims that other employees, specifically African American males, were permitted to say, "What's up, my dog?" or more offensive language to greet customers (*Id.*,

at 24-25).  Ms. Bumpass admits that, when she raised this issue with Ms. Trotter, Ms. Trotter spoke

to the other employees about their language and that those comments stopped when managers were

around (*Id.*, at 25).  Further, Ms. Bumpass claims to have reported to Ms. Trotter the "reference of

color distinction and the reference of age," but because Ms. Bumpass believed that Ms. Trotter

addressed it, Ms. Bumpass did not take her complaints to Human Resources or compliance (*Id.*, at

26).

Although Ms. Bumpass claims generally that, during 2014, she and female workers "were

subject to unwanted and offensive touching, vulgar and suggestive language and co-workers," (*Id.*,

at 24), when asked specifically about language, Ms. Bumpass claimed that one co-worker referred

to her as "white lady" several times in conversations with customers (*Id.*, at 25) and that "most of

the guys" called her "old lady." (*Id.*).  She specifically identified Shannon Wilson as the individual

who referred to her as "white lady," and Fernando and Mr. Smith who referred to her as "old lady."

(*Id.*).  She testified that this went on during 2013 and 2014, that she confronted these individuals

about their language, but that their comments did not stop (*Id.*).  Instead, according to Ms.

Bumpass, these co-workers told her "jokingly" not to "be so sensitive." (*Id.*).  Ms. Bumpass

admitted that she did not bring these comments up with anyone else (*Id.*).[6]

Further, when asked to describe the events on which she bases her tort of outrage claim,

Ms. Bumpass described an incident in which she requested days off while her husband was in the

hospital, but her request "was denied and given to a person of color that had not been with the

company as long as [Ms. Bumpass] had." (*Id.*, at 28).  Ms. Bumpass admitted that she was told by

Ms. Gaddy that the other employee had requested the days off before Ms. Bumpass had submitted

---

[6]  Ms. Free testified that she never heard any co-worker use a racial slur, gender slur, or
age slur about Ms. Bumpass (Dkt. No. 44-9, at 6).

her request, but Ms. Bumpass claimed that was false (*Id.*, at 29). Ms. Bumpass then cited favoritism (*Id.*). There is an email exchange between Ms. Gaddy and Ms. Bumpass regarding this request (Dkt. No. 44-3, at 6). When describing one of her examples of favoritism by explaining that certain employees were permitted to pre-sell inventory stock, Ms. Bumpass admitted that Babe Free was permitted to do that, too. (Dkt. No. 44-1, at 29).[7] By Ms. Bumpass' admission, Ms. Free is a Caucasian female who at the time was over 40 years of age (Dkt. No. 44-4, at 5). Those were the only events Ms. Bumpass cited when asked to describe all events on which she based her tort of outrage claim.

In her testimony, Ms. Free explained that she perceived Ms. Gaddy to be hostile and negative by going behind people's backs and pitting co-workers against one another (Dkt. No. 44-9, at 8). When asked whether Ms. Gaddy did this based on race, Ms. Free clarified that Ms. Gaddy did it to all co-workers (*Id.*). Further, Ms. Free said that her co-workers never treated her in the way she perceived Ms. Gaddy treated her (*Id.*).

### 3. Racial References

Although Ms. Bumpass claims that she was discriminated against due to her status as a Native American, when asked about this, Ms. Bumpass testified that she believed that she was discriminated against on the basis of her "skin color" and conceded that many references she relied on for this claim were "white" references, not Native American references (Dkt. No. 44-1, at 30).

### 4. Alleged Comparator Conduct

In her EEOC intake questionnaire, Ms. Bumpass contends that other Verizon employees "did the same thing but were not disciplined." (*Id.*, at 22; Dkt. No. 44-4, at 7). Ms. Bumpass claims

---

[7] Ms. Bumpass claims that Ms. Free complained to Verizon about alleged harassment. There is record evidence in the form of emails from Ms. Free to Ms. Moseley complaining about alleged harassment; those emails post-date Ms. Bumpass' termination (Dkt. No. 44-8, at 1-5).

that everyone ran credit on new customers to see if those customers qualified over the phone without the customers in the store (Dkt. No. 44-1, at 22-23). She maintains that it was done "under directions of management," including Ms. Gaddy (*Id.*, at 23). Ms. Bumpass claims that she saw other employees switch friends and family over to personal accounts or employee accounts (*Id.*). She claims it "was just something that was not actually pointed out to [employees] as – as could be a violation." (*Id.*).

Ms. Free testified that, to gain access to credit reports, "the customer had to be in front of you. You had to get a picture ID." (Dkt. No. 44-9, at 7). She admitted that, when she first started working at Verizon, employees were permitted to do things over the phone but that, at a certain point, the policy changed (*Id.*). When the policy allowed it, according to Ms. Free, Ms. Gaddy approved of it (*Id.*). Ms. Free also recalled activating phones for customers who were not in the store, but she recalled that happening for existing customers (*Id.*, at 8). Ms. Free testified that, after the policy changed, some employees continued this practice "under the table," and Ms. Free admitted that she did not know for a fact whether Verizon managers were aware of this at the time (*Id.*).

Mr. Smith testified that employees accessed customer accounts from time-to-time without the customer being in the store (Dkt. No. 44-10, at 8). He clarified that this was done for existing customer accounts that were in the system; new customer accounts to be created were not in the system and could not be accessed in this way (*Id.*, at 9). Mr. Smith also testified that, if an employee had a personal account as well as an employee account, he understood the employee could buy accessories on a personal account and understood that to be a common practice in the store (*Id.*).

Al Bilgishirer only worked at the Pine Bluff store until approximately 2012; he transferred to the Hot Springs store at that time and was involved in a serious car accident that caused him to be out of work for a period (Dkt. No. 44-13, at 3). He testified that he recalled employees accessing accounts for authorized users or account holders who did not have time to come into the store (*Id.*).

Prentice O'Guinn, who was the district manager over the Pine Bluff store from approximately 2010 to 2013, testified that, for existing customers who give permission and under management approval, a Verizon employee might be permitted to access an existing customer account (Dkt. No. 44-15, at 8). He testified that a new customer presents a different situation (*Id.*).

Ms. Gaddy testified that, when she became manager at the Pine Bluff store, she had approximately eight employees, four of whom were African American and four of whom were Caucasian (Dkt. No. 44-11, at 4). Ms. Gaddy estimated that three of the Caucasian employees were over 40 years old, while the other was in his 20s (*Id.*). For a time, Ms. Gaddy had two assistant managers, one Caucasian male over 40 and one African American female under 40 (*Id.*, at 5). Ms. Bumpass was one of the Caucasian employees who worked under Ms. Gaddy, and she was fired. According to Ms. Gaddy, Mr. Bilgishirer who is a Caucasian, male employee over 40 years of age was fired "[o]nce he went to Hot Springs. . . ." (*Id.*, at 5). Ms. Free, who was a Caucasian, female employee over 40 years of age resigned in approximately 2016, according to Ms. Gaddy (*Id.*). Ms. Gaddy testified that she was unaware of any other employees in the Pine Bluff store running credit checks without a customer standing in the store (*Id.*, at 10).

### 5.    Rates Of Pay

Ms. Bumpass testified that Mr. Smith made more money than she did, and she believed that it was because he was male (Dkt. No. 44-1, at 32). However, Ms. Bumpass was also aware

of a younger male who was paid less than she was and of a younger woman who was paid more than she was (*Id.*).

### 6. Meetings To Discuss Alleged Policy Violations

Although Ms. Bumpass contends that, after her initial meeting with Ms. Gaddy and Mr. O'Guinn about alleged policy violations, Ms. Gaddy and Mr. O'Quinn said the alleged conduct was brought to their attention, that they needed to discuss it with Ms. Bumpass, and that Ms. Bumpass should not do this again in the future (*Id.*, at 39). Ms. Bumpass could not recall the exact words used by Verizon management, but she claims that she was left with the impression that this matter was closed, provided she promised never to do this again (*Id.*). However, even Ms. Bumpass admits that the only violation addressed in this meeting was the one involving the customer and the credit check (*Id.*, at 40). Ms. Bumpass does not recall ever speaking to Verizon management about the other alleged policy violations (*Id.*).

Mr. O'Guinn testified that he transferred out of his role as district manager with responsibility over the Pine Bluff store in November 2014 (Dkt. No. 44-15, at 6-7). He explained that, in regard to Ms. Bumpass and the issue of termination, he did not formulate an opinion because the investigation into her alleged conduct was ongoing; he did not have all of the details while he held the district manager position to make a decision (*Id.*, at 10).

## II. Discussion

### A. Legal Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable

jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B. Exhaustion of Administrative Remedies As To Title VII and the ACRA Discrimination Claims

Verizon moves to dismiss for failure to exhaust administrative remedies several of Ms. Bumpass' claims, including several of her discrimination claims under Title VII and the ACRA (Dkt. No. 34, at 3-6).

### 1. Timeliness Of Title VII Claims

To assert a Title VII claim, Ms. Bumpass must have first exhausted her administrative remedies by filing a charge of discrimination with the EEOC within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C § 2000e–5(e)(1); 29 U.S.C. § 626(d)(1)(B); *see Hutson v. Wells Dairy, Inc.*, 578 F.3d 823, 825-26 (8th Cir. 2009) (discussing together Title VII and ADEA charge filing requirements); *Shelton v. Boeing Co.*, 399 F.3d 909, 912 (8th Cir. 2005) (discussing ADEA charge filing requirements). Exhaustion of administrative remedies is required under Title VII because it provides the EEOC the first opportunity to investigate

discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts. *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994); *Shelton*, 399 F.3d at 912. "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Williams*, 21 F.3d at 223 (quoting *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985)).[8]

In her complaint, Ms. Bumpass alleges that Verizon discriminated against her on the basis of race, gender, and age during her employment at Verizon's Pine Bluff location, which began in 2010 (Dkt. No. 1, at 3-4). Ms. Bumpass filed her EEOC charge on June 25, 2015, alleging discrimination and retaliation based on race, sex, and age as a result of her termination on January 24, 2015 (*Id.*, at 7).[9] When asked to describe the date or dates discrimination took place for the charge, Ms. Bumpass identified the earliest date as the date of her termination and the latest date as the date of her termination (*Id.*). She claimed that she believed she was "discharged because of [her] race (Native American Indian), age (57) and sex (f) in violation of Title VII of the Civil Rights Act of 1964, as amended. [She] also believe[d she] was discharged in retaliation for complaining to management." (*Id.*).

Given that Ms. Bumpass filed her charge on June 25, 2015, Verizon maintains that any Title VII claim she asserts based on conduct alleged to have occurred more than 180 days prior to

---

[8] Claims brought under § 1981, however, do not require the exhaustion of administrative remedies. *See Bainbridge v. Loffredo Gardens, Inc.*, Case No. 4:02-cv-40192, 2003 WL 21911063, at *4 (S.D. Iowa July 31, 2003) (citations omitted), *aff'd in part, rev'd on other grounds*, 378 F.3d 756 (8th Cir. 2004). .

[9] The parties agree, and Ms. Bumpass admitted in her deposition, that she was actually terminated on January 26, 2015 (Dkt. No. 44-1, at 24). Her complaint and EEOC charge include scrivener's errors regarding this date (Dkt. No. 1).

her filing her charge, or prior to December 28, 2014, is time-barred. *See, e.g., Gipson v. KAS Snacktime Co.*, 83 F.3d 225, 228 (8th Cir. 1996).

Here, Ms. Bumpass alleges in response that the date she completed the intake questionnaire, not filed the charge, should control. When confronted with this issue in the past, the Eighth Circuit consistently held that intake questionnaires which are neither signed under oath nor verified do not satisfy the statutory requirement for an administrative charge. *See Shempert v. Harwick Chem. Corp.*, 151 F.3d 793, 796 (8th Cir. 1998); *Lawrence v. Cooper Communities, Inc.*, 132 F.3d 447, 450 (8th Cir. 1998); *Schlueter v. Anheuser-Busch, Inc.*, 132 F.3d 455, 458 (8th Cir. 1998). All of these cases pre-date the Supreme Court's decision in *Edelman v. Lynchburg College*, 535 U.S. 106 (2002), which may overrule these cases. *See Sifferman v. Board of Regents, Southeast Missouri State University*, 250 F. Supp. 2d 1139, 1143 (E.D. Mo. 2003) (examining this issue). In *Edelman*, the Supreme Court upheld an EEOC regulation, 29 C.F.R. § 1601.12, that permits technically flawed charges of discrimination to be perfected by later amendment. Specifically, in *Edelman*, the complainant's original letter that was unverified did not serve as a procedural bar to the claim. The regulation sets forth the minimum requirements for a charge. *See* 29 C.F.R. § 1601.12; *see also Federal Exp. Corp. v. Holowecki*, 552 U.S. 389 (2008) (determining that, along with minimum regulatory requirements, the proper test for whether a filing is a charge is whether filing, taken as a whole, should be construed by request by employee for the EEOC to take action). Ms. Bumpass's intake questionnaire is part of the record evidence (Dkt. No. 44-4, at 1-9). The intake questionnaire was received on May 26, 2015 (*Id.*, at 1). Given this date, 180 days prior is November 27, 2014, and 300 days prior is July 30, 2014.

Further, Verizon contends that Ms. Bumpass is barred from asserting any Title VII claims aside from Title VII claims based on her termination as that is the only alleged discriminatory act

described by Ms. Bumpass in her charge. Generally, because each incident of discrimination or retaliation is a "discrete act," an employee must exhaust the administrative process for each discrete act for which he or she seeks to bring a claim. *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 670 (8th Cir. 2006). The plaintiff's charges must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Cottrill*, 443 F.3d at 634 (quoting 29 C.F.R. § 1601.12(b)). "If the EEOC gives the individual a right-to-sue letter following the EEOC investigation, the charge limits the scope of the subsequent civil action because the plaintiff may [only] seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Id.* (internal citation and quotation omitted). "Permitting claims to be brought in court which are outside the scope of the EEOC charge would circumscribe the EEOC's investigatory and conciliatory role and deprive the charged party of notice of the charge." *Id.*

The Eighth Circuit has determined that, where alleged discriminatory or retaliatory conduct has occurred after an EEOC charge has been filed, "[a] plaintiff will be deemed to have exhausted administrative remedies if the allegations of the judicial complaint are *like or reasonably related to* the administrative charges that were timely brought." *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir. 1986) (emphasis added). "'We do not require that subsequently-filed lawsuits mirror the administrative charges' as long as 'the sweep of any subsequent judicial complaint' is no broader than 'the scope of the EEOC investigation which could reasonably be expected to grow out of the charge' filed in the EEOC complaint." *Wedow*, 442 F.3d at 674 (quoting *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004)). Although a plaintiff will be considered to have exhausted his administrative remedies as to allegations that are like or reasonably related to the substance of charges exhausted in his administrative EEOC charge, , 218 F.3d at 222, the plaintiff's

allegations must be sufficient to put the employer on notice of the conduct complained of and the general basis of the claim, *Fair v. Norris*, 480 F.3d 865, 866-67 n.2 (8th Cir. 2007).

The "like or reasonably related" standard has been narrowed based largely on the reasoning of the Supreme Court in *National Railroad Passenger Corporation v. Morgan*, in which the Court determined that a discrete act of discrimination constitutes a separate actionable employment practice and starts a new clock for filing charges based on it. 536 U.S. 101, 113-14 (2002); *see Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 852 (8th Cir. 2012). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Morgan*, 536 U.S. at 114. Only discrete acts that occurred between 180 days prior to the filing of the charge and the day Ms. Bumpass filed the charge are actionable. *See id.*

Having examined the language of Ms. Bumpass' EEOC charge, the Court agrees that Ms. Bumpass is barred from asserting any Title VII claims aside from Title VII claims based on her termination as that is the only alleged discriminatory act described by Ms. Bumpass in her charge. As a result, even if this Court were to determine that the filing of Ms. Bumpass' intake questionnaire, not her EEOC charge, was the operative date for determining timely allegations, due to the language of her charge, the Court still limits Ms. Bumpass' Title VII claims to claims regarding her termination.

### 2. Timeliness Of ACRA Claims

Under the ACRA, a claim must be filed either: (1) within one year after the alleged employment discrimination or (2) within 90 days after receipt of a right-to-sue letter issued by the EEOC. *See* Ark. Code Ann. § 16-123-107(c)(3).

Here, Ms. Bumpass filed her complaint on April 8, 2016 (Dkt. No. 1). Therefore, any alleged employment discrimination occurring before April 8, 2015, cannot be the basis for an ACRA claim under the first option for filing a timely ACRA claim.

This Court next considers whether Ms. Bumpass satisfied the second option for filing a timely ACRA claim. Verizon concedes that Ms. Bumpass filed suit within 90 days of receiving a right-to-sue letter from the EEOC. Verizon contends that, as a result, Ms. Bumpass' claims raised in her EEOC charge may be the basis of a timely ACRA claim, as well. Verizon maintains that, given the allegations in her EEOC charge, Ms. Bumpass is barred from asserting any ACRA claims aside from claims based on her termination, as that is the only alleged discriminatory act about which she complained in her charge. Given the language of Ms. Bumpass's EEOC charge, the Court agrees.

### C.    Disparate Impact Claim

In response to Verizon's argument that certain of her discrimination claims are untimely, Ms. Bumpass purports to allege a disparate impact claim. Disparate treatment claims involve allegations of intentional discrimination, while disparate impact claims challenge "practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities. . . ." *Ricci v. DeStefano,* 557 U.S. 557, 577 (2009); *see also Bennett v. Nucor Corp.*, 656 F.3d 802, 808 (8th Cir. 2011). Ms. Bumpass is not clear as to under what statute or statutes cited in her complaint she intended to bring a disparate impact claim.

Even if the Court recognized such a claim as having been raised by Ms. Bumpass in her complaint, summary judgment in favor of Verizon is proper on any disparate impact claim brought under § 1981 because that statute "can be violated only by purposeful discrimination." *Gen. Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 391 (1982). A showing of disparate impact

through a neutral practice is insufficient to prove a violation of § 1981. *Bennett*, 656 F.3d at 817 (citing *Ferrill v. Parker Grp., Inc.,* 168 F.3d 468, 472 (11th Cir. 1999); *Mozee v. Am. Commercial Marine Serv. Co.,* 940 F.2d 1036, 1051 (7th Cir. 1991)).

As for Title VII, an unlawful disparate impact is established under that statute "only if," as relevant here, "a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of [a protected class]. . . and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e–2(k)(1)(A)(i). To establish a *prima facie* case of disparate impact under this provision, the plaintiffs must show: "(1) an identifiable, facially-neutral personnel policy or practice; (2) a disparate effect on members of a protected class; and (3) a causal connection between the two." *Mems v. City of St. Paul,* 224 F.3d 735, 740 (8th Cir. 2000).

The first element of a *prima facie* case is the identification of a specific employment practice responsible for the disparate impact; general allegations typically do not suffice. Next, a plaintiff must show a disparate impact. In support of a claim for disparate impact the plaintiff must present evidence of a statistically significant impact on members of the protected group. Tests of statistical significance must eliminate chance as the cause of the disparate impact. *Hameed v. International Ass'n of Bridge, Structural and Ornamental Iron Workers, Local Union No. 396,* 637 F.2d 506, 513 (8th Cir. 1980). Generally, the plaintiff in a disparate impact case relies on statistical evidence that "must be of a kind and degree sufficient to show that the practice in question has caused" the alleged disparate impact. *Mems*, 224 F.3d at 740.

The Court does not read Ms. Bumpass' complaint to allege this claim (Dkt. No. 1). Even if she intended to allege this claim, Verizon moved for summary judgment on all of Ms. Bumpass'

claims (Dkt. No. 34, at 1). In response to that motion, Ms. Bumpass has not identified any specific employment policy or practice for analysis, and she has not provided any record evidence of statistical disparities resulting from a specific employment practice by Verizon. Verizon maintains that it terminated Ms. Bumpass for multiple violations of the Code of Conduct. To the extent Ms. Bumpass attempts to argue statistics based on the Caucasian and African American employees with whom she worked at the Pine Bluff store (Dkt. No. 43, at 22), viewing the record evidence in the light most favorable to Ms. Bumpass, the Court concludes that no reasonable fact finder could find in Ms. Bumpass' favor on this element of her purported disparate impact claim. As a result, summary judgment will be granted in favor of Verizon on any disparate impact claim. This effort does not salvage Ms. Bumpass' time-barred claims.

### D. Claims Of Race And Gender Discrimination Based On Termination Under 42 U.S.C. § 1981, Title VII, And The ACRA

To the extent Ms. Bumpass alleges claims for discrimination arising under § 1981, Title VII, and the ACRA based on her termination, the elements of a discrimination claim brought under the federal statutes are the same, and that same standard applies to claims under the ACRA. *See McCullough v. Univ. of Ark. for Med. Sciences*, 559 F.3d 8555, 860 (8th Cir. 2009) (applying the same standards to Title VII and ACRA claims); *Roark v. City of Hazen, Ark*., 189 F.3d 758 (8th Cir. 1999) (examining the *prima facie* case and burden shifting framework applicable to § 1981 and Title VII claims). She purports to state race discrimination claims under § 1981, Title VII, and the ACRA. She purports to state gender discrimination claims under Title VII and the ACRA. Ms. Bumpass can establish a *prima facie* claim of discrimination either by providing direct evidence of discrimination or by creating an inference of unlawful discrimination under the three-step analysis set out in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-05 (1973). *Bone v. G4S Youth Servs.*, *LLC*, 686 F.3d 948, 953 (8th Cir. 2012).

However, any alleged acts outside the period of limitations applicable to Ms. Bumpass' Title VII, ACRA, and § 1981 claims are not actionable. For her Title VII and ACRA claims, 180 days is November 27, 2014. Even 300 days reaches only to July 30, 2014. For her § 1981 claims, alleged acts before April 8, 2012, are not actionable. *See Johnson v. Knight*, 536 F. Supp. 1012, 1019-20 (E.D. Ark. 2008) (examining statutes of limitation applicable to § 1981 claims alleging various types of harassment).

Direct evidence is evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the adverse employment action. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011) (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)). "Thus, 'direct' refers to the causal strength of the proof, not whether it is 'circumstantial' evidence. A plaintiff with strong direct evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, regardless of whether his strong evidence is circumstantial." *Id.* However, "if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Id.*

Under the *McDonnell Douglas* analysis, the elements of a *prima facie* discrimination claim are: (1) the employee belonged to a protected class; (2) she was qualified to perform her job; (3) she suffered an adverse employment action; and (4) she was treated differently from similarly situated employees who do not belong to the protected class. *Hesse v. Avis Rent A Car System,*

*Inc.,* 394 F.3d 624, 631 (8th Cir. 2005).[10] The fourth element of a *prima facie* discrimination case also can be met if the employee provides "some other evidence that would give rise to an inference of unlawful discrimination." *Putman v. Unity Health Sys.,* 348 F.3d 732, 736 (8th Cir. 2003). Once an employee establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions, and then shifts back to the employee to show that the employer's reason was pretextual. *Hesse,* 394 F.3d at 631.

### 1. *Prima Facie* Case

Verizon contends that Ms. Bumpass will be unable to establish a *prima facie* case of race or gender discrimination based on her termination. Verizon maintains that Ms. Bumpass is unable to demonstrate a genuine issue of material fact in dispute regarding whether others were treated differently under the same or similar circumstances. "While the burden of establishing a prima facie case of disparate treatment is not onerous, the plaintiff must be able to produce some evidence of similarity between her and her comparator." *Rebouche v. Deere & Co.*, 786 F.3d 1083, 1087-88 (8th Cir. 2015) (internal quotation and citation omitted). Because the required showing for a *prima facie* case is a "flexible evidentiary standard," a plaintiff can establish an inference of discrimination to satisfy this element in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class, by showing biased comments by a decisionmaker, or by showing pretext with evidence that an employer failed to

---

[10] Although Ms. Bumpass is Native American, she also claims that she was discriminated against on the color of her skin, "white." To the extent Ms. Bumpass' claims can be construed as reverse-race discrimination claims, as she contends she was discriminated against because her skin was white, the Eighth Circuit Court of Appeals also requires that the *prima facie* case include a showing "'that background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *See Duffy v. Wolle,* 123 F.3d 1026, 1036 (8th Cir. 1997) (quoting *Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63, 67 (6th Cir. 1985) (quotations and citations omitted), *cert. denied,* 523 U.S. 1137 (1998). Ms. Bumpass fails to make this showing, even with all record evidence construed in her favor.

follow its own policies or shifted its explanation of the employment decision. *Grant v. City of Blytheville, Ark.*, 841 F.3d 767, 774 (8th Cir. 2016). With respect to statistics, the Eighth Circuit Court of Appeals has determined that "[t]he mere recitation of statistics, [however,] without some evidence tending to show that they indicate a meaningful phenomenon, does not show discriminatory motive." *Id.* at 775 (quoting *Noreen v. PharMerica Corp.*, 833 F.3d 988, 994 (8th Cir. 2016)).

Viewing the record evidence in the light most favorable to Ms. Bumpass, the Court concludes that no reasonable fact finder could find in Ms. Bumpass' favor on this element of her race or gender discrimination claim.

### 2.    Legitimate Nondiscriminatory Reason

Verizon contends that, even if Ms. Bumpass could establish a *prima facie* case of race or gender discrimination, Verizon had a legitimate, non-discriminatory reason for terminating her. The employer's burden to articulate a nondiscriminatory reason is "not onerous." *Flloyd v. State of Mo. Dep't of Soc. Servs., Div. of Family Servs.*, 188 F.3d 932, 936 (8th Cir. 1999). Here, Verizon articulates a non-discriminatory reason for Ms. Bumpass' termination by maintaining that it terminated her for multiple violations of the Code of Conduct. The Court agrees that Verizon has articulated a legitimate, non-discriminatory reason for terminating Ms. Bumpass.

### 3.    Pretext

Once the employer articulates a legitimate, non-discriminatory reason for the challenged conduct, the plaintiff must produce sufficient evidence to create a genuine issue of material fact regarding whether the proffered reason is mere pretext for intentional discrimination. *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1007 (8th Cir. 2005). The plaintiff has the burden of showing, by a preponderance of the evidence, that the employer's proffered reason for the challenged action is

not true and that discrimination was the real reason.  *Reeves v. Sanderson Plumbing Prods.*, 530

U.S. 133, 143 (2000).

"At the pretext stage, 'the test for determining whether employees are similarly situated to

a plaintiff is a rigorous one.'"  *Bone,* 686 F.3d at 956 (quoting *Rodgers v. U.S. Bank, N.A.,* 417

F.3d 845, 853 (8th Cir. 2005)).  To succeed at the pretext stage, Ms. Bumpass must show that she

and the potential comparators she identifies were "similarly situated in all relevant respects." *Id.*

(quoting *Rodgers,* 417 F.3d at 853).  That is, the employees "used for comparison must have dealt

with the same supervisor, have been subject to the same standards, and engaged in the same

conduct without any mitigating or distinguishing circumstances."  *Wierman v. Casey's Gen. Stores,*

638 F.3d 984, 994 (8th Cir. 2011) (quoting *Cherry v. Ritenour Sch. Dist.,* 361 F.3d 474, 479 (8th

Cir. 2004)).  Viewing the record evidence in the light most favorable to Ms. Bumpass, no

reasonable fact finder could conclude that Ms. Bumpass identifies comparators to demonstrate

pretext.  Based on the record evidence, the Court is skeptical of Ms. Bumpass' argument that all

employees engaged in the same types of violations of the Code of Conduct in which Ms. Bumpass

is alleged to have engaged.  Regardless, even if that were the case, Ms. Bumpass has failed to

identify any purported comparator not in the protected class who committed the multiple violations

of the Code of Conduct Ms. Bumpass is alleged to have committed, was supervised by the same

individuals, and who was not terminated.

Further, "[s]ubstantial changes over time in the employer's proffered reason for its

employment decision support a finding of pretext."  *Kobrin v. Univ. of Minn.,* 34 F.3d 698, 703

(8th Cir. 1994); *see also Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 835 (8th Cir. 2002).

Although Ms. Bumpass argues that the investigation into her alleged Code of Conduct violations

was closed and then later reopened when the district manager changed, viewing the record

evidence in the light most favorable to Ms. Bumpass, no reasonable fact finder could find in favor of Ms. Bumpass on this argument; there is no support for this argument in the record.

A negative performance evaluation or disciplinary violations may be pretext for discrimination where a fact issue is raised regarding truth of the allegations. *See Fisher v. Pharmacia & Upjohn,* 225 F.3d 915, 922 (8th Cir. 2000). Moreover, if the proffered reason for an employee's termination is shown by conflicting evidence to be untrue, then the nonmoving party is entitled to all favorable inferences that the false reason given masks the real reason of intentional discrimination. *Loeb v. Best Buy Co.,* 537 F.3d 867, 873 (8th Cir. 2008). Here, Ms. Bumpass concedes the violations of the Code of Conduct took place.

Generally, an employee's justifications for failing to meet the employer's expectations are not evidence that creates a genuine issue of fact as to whether the employer's reasons were mere pretext. *Haigh v. Gelita USA, Inc*., 632 F.3d 464, 470 (8th Cir. 2011); *Riley v. Lance, Inc.,* 518 F.3d 996, 1002 (8th Cir. 2008) ("[The plaintiff's] attempt to justify his failure [to meet the employer's requirements] does not create a genuine issue as to the legitimacy of the requirement."). Accordingly, any alleged factual dispute regarding the details of some of the alleged Code of Conduct violations and whether others where justifiable does not preclude summary judgment.

Moreover, "[t]he critical inquiry in discrimination cases like this one is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge. *McCullough,* 559 F.3d at 861-62. Viewing the record evidence in the light most favorable to Ms. Bumpass, no reasonable fact finder could conclude that Verizon did not in good faith believe that Ms. Bumpass engaged in the conduct for which she was terminated; Ms. Bumpass admits that she engaged in the conduct. Further, the Court notes, "[t]he appropriate scope of investigation is a

business judgment, and shortcomings in an investigation do not by themselves support an inference of discrimination." *Id.* at 863.

"[T]he showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for terminating an employee. A plaintiff must also demonstrate that the circumstances permit a reasonable inference of discriminatory animus." *Roeben v. BG Excelsior Ltd. Partnership,* 545 F.3d 639, 643 (8th Cir. 2008) (internal quotation marks and citation omitted). Viewing the record evidence in favor of Ms. Bumpass, nothing in the record permits such an inference here, and no reasonable fact finder could find in favor of Ms. Bumpass on pretext.

As a result, because Ms. Bumpass fails to demonstrate a *prima facie* case of race or gender discrimination; because Verizon has articulated a legitimate, non-discriminatory reason for her termination; and because Ms. Bumpass fails to establish pretext and a reasonable inference of discriminatory animus, the Court grants summary judgment in favor of Verizon on Ms. Bumpass' race and gender discrimination claims based on her termination.

### E.     Claims Of Race And Gender Discrimination Based On Alleged Hostile Work Environment Under 42 U.S.C. § 1981, Title VII, And The ACRA

When asked to describe the date or dates discrimination took place for the charge, Ms. Bumpass identified the earliest date as the date of her termination and the latest date as the date of her termination (Dkt. No. 1, at 7). She claimed that she believed she was "discharged because of [her] race (Native American Indian), age (57) and sex (f) in violation of Title VII of the Civil Rights Act of 1964, as amended. [She] also believe[d she] was discharged in retaliation for complaining to management." (*Id.*). The Court acknowledges that, in her EEOC intake questionnaire, Ms. Bumpass alleged hostile environment harassment dating from 2011 (Dkt. No. 44-4, at 5). Further, the Court acknowledges that, under § 1981, Ms. Bumpass need not exhaust

her administrative remedies prior to filing a race discrimination claim and that hostile environment harassment is actionable under § 1981. *See Clay v. Credit Bureau Enterprises, Inc.*, 754 F.3d 535 (8th Cir. 2014). However, any alleged acts outside the period of limitations applicable to Ms. Bumpass' Title VII, ACRA, and § 1981 claims are not actionable. For her Title VII and ACRA claims, 180 days is November 27, 2014. Even 300 days reaches only to July 30, 2014. For her § 1981 claims, alleged acts before April 8, 2012, are not actionable and do not serve as a basis for a hostile environment race discrimination claim. *See Johnson*, 536 F. Supp. at 1019-20 (examining statutes of limitation applicable to § 1981 claims alleging various types of harassment). Ms. Bumpass has worked at the Pine Bluff location from the last part of September or the first part of October 2010 (Dkt. No. 44-1, at 13). She purports to state race discrimination claims under § 1981, Title VII, and the ACRA. She purports to state gender discrimination claims under Title VII and the ACRA.

To establish a *prima facie* case of hostile work environment harassment, Ms. Bumpass must show: (1) that she is a member of a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based on her membership in the protected group; and (4) that the harassment affected a term, condition or privilege of her employment.[11] *Clay*, 754 F.3d at 540. She must also demonstrate that a supervisor caused the harassment. *See Gordon v. Shafer Contracting Co.*, *Inc.*, 469 F.3d 1191, 1194-95 (8th Cir. 2006). In the alternative, if her hostile work environment claim is based on harassment by non-supervisory co-workers, she must also

---

[11] To the extent this claim is based on reverse-race discrimination, Ms. Bumpass fails to make a showing based on the record evidence that background circumstances support the suspicion that Verizon is that unusual employer who discriminates against the majority. *See Duffy,* 123 F.3d at 1036.

prove that the employer "knew or should have known of the harassment and failed to take proper remedial action." *Tatum v. City of Berkeley,* 408 F.3d 543, 550 (8th Cir. 2005).

Even if Ms. Bumpass could meet the first three elements of the *prima facie* case, to establish the fourth element, Ms. Bumpass must demonstrate that the harassment was "severe or pervasive enough to create an objectively hostile or abusive work environment" and that she subjectively believed that her working conditions had been altered. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

Harassment "standards are demanding—to be actionable, conduct must be extreme and not merely rude or unpleasant." *Alagna v. Smithville R–II Sch. Dist.,* 324 F.3d 975, 980 (8th Cir. 2003)). More than a few isolated incidents are required, and the alleged harassment must be so intimidating, offensive, or hostile that it poisoned the work environment. *Scusa v. Nestle U.S.A. Co.,* 181 F.3d 958, 967 (8th Cir. 1999). Ms. Bumpass must prove that the workplace was "permeated with discriminatory intimidation, ridicule, and insult." *Harris,* 510 U.S. at 21. Courts consider the "totality of the circumstances" to determine whether a work environment is hostile or abusive. *Baker v. John Morrell & Co.,* 382 F.3d 816, 828 (8th Cir. 2004). For example, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23.

The Court has examined all of the record evidence. Construing the record evidence in the light most favorable to Ms. Bumpass, the Court concludes that Ms. Bumpass fails to meet this high bar. Compared to other cases in which the Eighth Circuit Court of Appeals has found the alleged harassing conduct did not constitute race or gender discrimination, this Court determines that the harassment Ms. Bumpass alleges in this case does not create an actionable hostile work

environment claim. Although Ms. Bumpass testified to complaining about alleged harassment to various supervisors, Ms. Bumpass also testified that she believed the supervisors to whom she complained handled or addressed her complaints, that the purportedly harassing behavior stopped after she made her complaints, and that she did not feel the need to take any complaints to Human Resources or compliance as a result. Ms. Bumpass admitted that there was never any issue serious enough and left unresolved for her to alert Human Resources or report to compliance. The Court enters summary judgment in favor of Verizon on Ms. Bumpass's hostile work environment harassment claims.

### F. Claims Of Retaliation Under 42 U.S.C. § 1981, Title VII, And The ACRA

The Court determines that, in her EEOC charge, Ms. Bumpass alleged conduct sufficient to put Verizon on notice of her retaliation claim. Further, retaliation is actionable under § 1981. *See Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025 (8th Cir. 2013).

To establish a *prima facie* case of retaliation, Ms. Bumpass must show: (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action by her employer; and (3) a causal connection existed between the protected activity and the adverse action. *Wilkie v. Dept. of Health and Human Services, Inc.*, 638 F.3d 944, 955 (8th Cir. 2011). For a Title VII and §1981 claim, "[r]etaliation must be the 'but for' cause of the adverse employment action." *Blomker v. Jewell*, 831 F.3d 1051, 1059 (8th Cir. 2016) (internal revisions, quotations, and citations omitted); see also Wright v. St. Vincent Health Sys., 730 F.3d 732, 737-38 (8th Cir. 2013) (determining that the elements of a Title VII and § 1981 retaliation claim are identical). For these claims, "[i]t is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision." *Blomker*, 831 F.3d at 1059 (citations omitted). The Court evaluates ACRA retaliation claims under the same legal framework. *See Brown v. City of Jacksonville*, 711 F.3d

883, 892 (8th Cir. 2013); *Barber v. C1 Truck Driver Training, LLC,* 656 F.3d 782, 792 (8th Cir. 2011). If Ms. Bumpass establishes a *prima facie* case of retaliation, the Court applies the *McDonnell Douglas* framework. *See Shirrell v. St. Francis Medical Center*, 793 F.3d 881, 887 (8th Cir. 2015).

### 1. Protected Activity

Verizon contends that Ms. Bumpass did not engage in protected activity and, therefore, cannot establish a *prima facie* retaliation claim. Protected conduct is conduct by an employee that opposes any practice made unlawful by federal or state anti-discrimination laws or by an employee who makes a charge, testifies, assists, or participates in any manner in an investigation, proceeding or hearing such matters. *See Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 684 (8th Cir. 2012). "An employee must show that the employer had actual or constructive knowledge of the protected activity in order to establish unlawful retaliation." *Hervey v. Cty. of Koochiching*, 527 F.3d 711, 722 (8th Cir. 2008) (citing *Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 715 (8th Cir. 2000)).

General complaints, such as not feeling supported, not feeling like part of a team, feeling alone, made to feel small, or not feeling empowered and valued, are insufficient to qualify as protected activity. *See, e.g., Shirrell v. St. Francis Med. Ctr.*, 24 F. Supp. 3d 851, 863 (E.D. Mo. 2014) (finding "vague, unsupported complaint" does not qualify as protected activity), *aff'd* 793 F.3d 881, 887 (8th Cir. 2015). Any action taken in response to a conversation without the mention of race, gender, or age discrimination cannot be actionable. *See Helton v. Southland Racing Corp.*, 600 F.3d 954, 960-61 (8th Cir. 210). However, the Court notes that to prove protected activity, Ms. Bumpass need not establish the conduct she opposed was in fact discriminatory. *See Wentz*

*v. Maryland Casualty Co.,* 869 F.2d 1153, 1155 (8th Cir. 1989). Rather, Ms. Bumpass must demonstrate a good faith, reasonable belief that the underlying conduct violated the law. *Id.*

With respect to prior complaints about alleged conduct, Ms. Bumpass on her EEOC intake questionnaire claimed that she told Mr. Laisure about what she considered to be some harassment (Dkt. Nos. 44-1, at 20; 44-4, at 7). Ms. Bumpass maintains that she used the words "discrimination and race" when complaining to Mr. Laisure (Dkt. No. 44-1, at 22). According to Ms. Bumpass, she described to him her observation of "the favoritism of sale staff – and discrimination between male and female, black and white." (*Id.*). She claims to have told him specifically about certain incidents that happened to her and how she hoped he would work to "deter that type of behavior." (*Id.*). She admits that she only made a verbal complaint; she did not memorialize her conversation with him in any way (*Id.*). Further, she admits that she never went to Human Resources or compliance with these complaints (*Id.*). As Ms. Bumpass explained it, she understood to start by reporting her complaints to management and then to Human Resources or compliance if a complaint was not resolved (*Id.*). She testified that, if she believed an issue had been resolved, she did not go to Human Resources or compliance (*Id.*). Construing the record evidence in the light most favorable to Ms. Bumpass, the Court determines that Ms. Bumpass satisfies the first element of her *prima facie* retaliation claim.

### 2. Alleged Causation

Here, Ms. Bumpass does not dispute that she engaged in the conduct that Verizon contends violated the Code of Conduct and for which she was terminated. There is a legitimate, non-retaliatory reason for her termination. As a result, Ms. Bumpass cannot demonstrate that alleged retaliation was the but-for cause of her termination. Further, Ms. Bumpass fails to establish causation on the record evidence before the Court. She fails to demonstrate that there were

similarly situated co-workers who were treated differently for the same violations. In addition, some of the Code of Conduct violations leading to her termination occurred prior to the date she complained to Mr. Laisure about alleged discrimination.

Although Ms. Bumpass does not date her conversation with Mr. Laisure, the record evidence is that Mr. Laisure replaced Mr. O'Guinn, and Mr. O'Guinn testified that he transferred out of his role as district manager with responsibility over the Pine Bluff store in November 2014. Ms. Bumpass claims that she spoke to Mr. Laisure shortly after he took over this position. Ms. Bumpass was terminated on January 26, 2015, approximately two to three months later. "Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc), *cert. denied,* 528 U.S. 818, (1999). Courts in the Eighth Circuit have examined temporal proximity in other cases. *See, e.g., Feltmann v. Sieben,* 108 F.3d 970, 977 (8th Cir. 1997) (determining that plaintiff asserting retaliatory discharge claim was fired six months after the complaint; without more, temporal proximity found to be insufficient to show causal link); *Rath v. Selection Research, Inc.,* 978 F.2d 1087, 1090 (8th Cir. 1992) (concluding causal connection not likely established when only evidence is notice of termination which occurred six months after reprimand for filing a complaint); *see also Dhyne v. Meiners Thriftway, Inc.,* 184 F.3d 983, 989 (8th Cir. 1999) (standing alone, four months between charge and adverse action weakens inference of retaliation), *but see Bassett v. City of Minneapolis,* 211 F.3d 1097, 1104 (8th Cir. 2000) (determining that less than two months between charge and adverse action combined with pattern of increasing levels of discipline immediately following claims of discrimination sufficient to create causal connection). Here, construing the record

evidence in favor of Ms. Bumpass, she fails to demonstrate more than a temporal connection between her complaint to Mr. Laisure and her termination.

### 3. Pretext

Even if Ms. Bumpass can establish her *prima facie* claim of retaliation, the Court determines that she cannot establish pretext. For all of the same reasons Ms. Bumpass fails to demonstrate pretext with respect to her discrimination claim previously analyzed by the Court, she also fails to demonstrate pretext with respect to her retaliation claim. Construing all of the record evidence in favor of Ms. Bumpass, no reasonable fact finder would find pretext. As a result, the Court grants summary judgment in favor of Verizon on Ms. Bumpass' retaliation claim.

### G. Other § 1981 Claims

The Court acknowledges that race discrimination claims brought under § 1981 do not require the exhaustion of administrative remedies. *See Bainbridge v. Loffredo Gardens, Inc.*, Case No. 4:02-cv-40192, 2003 WL 21911063, at *4 (S.D. Iowa July 31, 2003) (citations omitted), *aff'd in part, rev'd on other grounds*, 378 F.3d 756 (8th Cir. 2004). Ms. Bumpass filed her complaint on April 8, 2016, making certain § 1981 race discrimination claims based on alleged conduct prior to April 8, 2012, untimely and making other §1981 race discrimination claims based on alleged conduct prior to April 8, 2013, untimely. *See Johnson*, 536 F. Supp. at 1019-20 (examining statutes of limitation applicable to § 1981 claims alleging various types of harassment).

In her EEOC intake questionnaire, Ms. Bumpass complained of alleged discriminatory incidents from June 2009, September 2009, March 2010, August 2010, and April 2011, along with complaining of her termination (Dkt. No. 44-4, at 1-9). The Court previously examined Ms. Bumpass' race discrimination claims based on her termination and alleged hostile environment

harassment. All other allegations in Ms. Bumpass' EEOC intake questionnaire based on race are time barred and cannot be the basis of a § 1981 race discrimination claim.

In that portion of her EEOC intake questionnaire where she lists incidents of discrimination specifically, Ms. Bumpass does not list the denial of a promotion at the Pine Bluff store. She does list the denial of promotions at the Waco store (Dkt. No. 44-4, at 2-3). Despite this, in her deposition, Ms. Bumpass represented that she applied for an assistant manager and manager position at the Pine Bluff store once (Dkt. No. 44-1, at 17). The applicable limitations period for a § 1981 claim based on an alleged failure to promote is three years, meaning Ms Bumpass' claim can be based on acts after April 8, 2013, but not before. *Johnson*, 536 F. Supp. at 1020.

To raise a presumption of discrimination on a failure-to-promote claim, Ms. Bumpass must show that: (1) she is a member of a protected group; (2) she was qualified and applied for an available position; (3) she was rejected; and (4) employees similarly situated but not part of the protected group were promoted instead.[12] *Ross v. Kansas City Power and Light Co.*, 293 F.3d 1041, 1045-46 (8th Cir. 2002); *Shannon v. Ford Motor Co.,* 72 F.3d 678, 682 (8th Cir. 1996). If Ms. Bumpass establishes her *prima facie* case, the burden of production shifts to Verizon to rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason for Ms. Bumpass' rejection. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981). If Verizon meets that burden, Ms. Bumpass may prevail by proffering evidence that Verizon's reason was a pretext for intentional discrimination. *Shannon,* 72 F.3d at 682.

---

[12] To the extent this claim is based on reverse-race discrimination, Ms. Bumpass fails to make a showing based on the record evidence that background circumstances support the suspicion that Verizon is that unusual employer who discriminates against the majority. *See Duffy,* 123 F.3d at 1036.

When asked during her deposition, Ms. Bumpass was unsure of the date she applied for either position, although she said it was around the time Ms. Gaddy and Ms. Trotter started (Dkt. No. 44-1, at 17). Ms. Bumpass recalled that she applied through the PeopleSoft system but admitted that she received no acknowledgment or receipt of her application that time, despite having received such acknowledgments in the past (*Id.*). Further, she testified that she did not have a manager at the time to ask about her application being received (*Id.*). Viewing all record evidence in Ms. Bumpass' favor, the Court concludes that she has failed to establish a *prima facie* case based on an alleged failure to promote. Ms. Bumpass' own testimony fails to establish whether she even successfully applied for a promotion and, if so, when she applied for a promotion during the relevant time period. Without this information, it is unclear who received the promotion for which Ms. Bumpass claims to have applied, whether that person was similarly situated to Ms. Bumpass but not part of the protected group, and what that person's qualifications for the position were in relation to Ms. Bumpass' qualifications. The Court grants summary judgment in favor of Verizon on this claim.

### H.     Age Discrimination

Ms. Bumpass claims age discrimination in her EEOC charge. She also asserts it in her complaint (Dkt. No. 1). However, in her complaint, she cites only Title VII, § 1981, § 1983, the Equal Protection Clause, and the ACRA. None of these laws prohibit age discrimination or give rise to a claim based on alleged age discrimination. *Morrow v. City of Jacksonville*, 941 F. Supp. 816, 826 (W.D. Ark. 1996).

Even if the Court were inclined to permit an age discrimination claim to go forward, Verizon moved for summary judgment on all of Ms. Bumpass' claims (Dkt. No. 34, at 1). As an initial matter, the same exhaustion requirements apply to ADEA claims that apply to Title VII

claims. *See Anderson v. Unisys Corp.*, 47 F.3d 302 (8th Cir. 1995) (examining EEOC exhaustion requirements as applied to ADEA claims). As a result, given the language of Ms. Bumpass' charge, the Court limits her ADEA claim to allegations regarding her termination for the same reason the Court limits her Title VII and ACRA claims to allegations regarding her termination. The only date on which Ms. Bumpass contends discrimination occurred in her EEOC charge is the date of her termination (Dkt. No. 1, at 7).

There is no record evidence of direct age discrimination. To establish a *prima facie* case of age discrimination, Ms. Bumpass "must show [s]he (1) was at least forty years old, (2) suffered an adverse employment action, (3) was meeting his employer's legitimate expectations at the time of the adverse employment action, and (4) was replaced by someone substantially younger." *Morgan v. A.G. Edwards & Sons, Inc.,* 486 F.3d 1034, 1039 (8th Cir. 2007). If she meets this showing, the burden shifts to Verizon to provide a legitimate, nondiscriminatory reason for its action. *Id.* If Verizon does so, the burden shifts back to Ms. Bumpass to show that Verizon's proffered reason is merely a pretext. *Id.* Further, the Supreme Court has held that the ADEA requires a plaintiff "to establish that age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs. Inc.,* 557 U.S. 167 (2009).

Viewing the record evidence in the light most favorable to Ms. Bumpass, the Court concludes that no reasonable fact finder could find in favor of Ms. Bumpass on an ADEA claim. She fails to establish her *prima facie* case, cannot demonstrate but-for causation, and fails to establish pretext. The Court grants summary judgment to Verizon on Ms. Bumpass' ADEA claim based on her termination. Further, to the extent Ms. Bumpass alleges an actionable hostile environment harassment claim based on age, this claim fails for the same reasons her race and

gender hostile work environment harassment claims fail. The Court grants summary judgment to Verizon on Ms. Bumpass' hostile work environment harassment claim based on age.

## I. Equal Pay Act Claim

Generally speaking, the EPA prohibits wage discrimination on the basis of gender. 29 U.S.C. § 206(d)(1); *Tenkku v. Normandy Bank*, 348 F.3d 737, 740 (8th Cir. 2003). A *prima facie* case under the EPA requires a showing that plaintiff's employer discriminated on the basis of gender by paying different wages to employees of the opposite sexes "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1); *Price v. N. States Power Co.*, 664 F.3d 1186, 1192-93 (8th Cir. 2011). "Equal pay for equal work is what the [statute] requires, and those elements are the focus of the prima facie case." *Price,* 664 F.3d at 1192-93. "Application of the Equal Pay Act depends not on job titles or classifications but on the actual requirements and performance of the job." *Simpson v. Merchants & Planters Bank*, 441 F.3d 572, 578 (8th Cir. 2006) (quoting *EEOC v. Universal Underwriters Ins. Co.*, 653 F.2d 1243, 1245 (8th Cir. 1981)). If a plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to prove one of four statutory affirmative defenses. *Id.* at 1081. Those defenses require an employer to prove that any wage differential is explained by: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). In an EPA case, a defendant cannot escape liability merely by articulating a legitimate non-discriminatory reason for the employment action. The employer must prove that the pay differential was based on a factor other than gender. *Price v. N. States Power Co.*, 664 F.3d 1186, 1191 (8th Cir. 2011).

Viewing the record evidence in the light most favorable to Ms. Bumpass, she fails to establish a *prima facie* case under the EPA. She testified that Mr. Smith was paid more than she was paid at some point during her employment at the Pine Bluff store. However, there is record evidence that, although Mr. Smith was a co-worker for some period, he also served as an assistant manager at some point at the Pine Bluff store. Ms. Bumpass was not an assistant manager at any time while employed at the Pine Bluff store. As a result, there is insufficient evidence from which a fact finder could conclude that Verizon discriminated on the basis of gender by paying different wages to employees of the opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. The Court grants summary judgment in Verizon's favor on Ms. Bumpass' EPA claim.

### J. State Law Claims

Ms. Bumpass alleges battery, breach of contract, and a tort of outrage claims against Verizon under Arkansas law. Because the Court grants summary judgment in favor of Verizon on Ms. Bumpass' federal claims, the Court declines to exercise supplemental jurisdiction over Ms. Bumpass' state law claims.

### III. Conclusion

For the foregoing reasons, the Court grants Ms. Bumpass' motion for extension of time (Dkt. No. 42). The Court grants, in part, and denies, in part, Verizon's motion to strike plaintiff's unsupported allegations and unsupported responses to defendant's statement of undisputed material facts (Dkt. No. 47). The Court grants, in part, and denies, in part, Verizon's motion to strike Ms. Bumpass' rebuttal and amendment to her rebuttal to Verizon's reply and to strike Ms. Bumpass' response to Verizon's original motion to strike (Dkt. No. 52). The Court grants Verizon summary judgment in its favor on all of Ms. Bumpass' federal claims (Dkt. No. 34). The Court

dismisses with prejudice Ms. Bumpass' federal claims; her request for relief on these claims is denied. The Court declines to exercise supplemental jurisdiction over Ms. Bumpass' state law claims, and those claims are dismissed. Judgment will be entered accordingly.

It is so ordered, this the 27th day of September, 2019.

Kristine G. Baker
United States District Judge